UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FREDERICK J. CALATRELLO**

      Petitioner,                                      Case no. 2:06-cv-697
                                                               **JUDGE GREGORY L. FROST**
                                                                **Magistrate Judge Terrence P. Kemp**

      v.

**CARRIAGE INN OF CADIZ**

      Respondent.

### OPINION & ORDER

This matter is before the Court for consideration of a Petition For Injunction Under Section 10(j) of The National Labor Relations Act, As Amended ("NLRA") filed by Petitioner, Frederick J. Calatrello, Regional Director for Region 8 of the National Labor Relations Board ("the Board") of behalf of the board (Doc. # 2), Petitioner's Supplemental Memorandum In Support (Doc. # 11), A Memorandum in Opposition filed by Respondent Carriage Inn of Cadiz (Doc. # 18), and a Reply Memorandum.  (Doc. # 22.)  For the reasons that follow, this Court **GRANTS** Petitioner's request for injunctive relief.

### Issues Presented

This case presents the following issues to the Court: (1) is there reasonable cause to believe that Respondent has violated the NLRA; and (2) is it just and proper to grant a temporary injunction in order to preserve the status quo prior to the alleged unfair labor practices.

### Summary of Facts

This Court will set forth only the facts of this case that are material to disposing of the

relevant issues at hand.  Respondent operates and manages a nursing facility in Cadiz, Ohio.  In November of 1992, the Board certified United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("the Union") as the exclusive bargaining representative of the employees in the bargaining unit.  From the Union's certification until on or about January 23, 2006 Respondent recognized and bargained with the Union exclusively.  The most recent collective bargaining agreement between the Union and Respondent was effective from November 10, 2002 to November 10, 2005.  Respondent and the Union were negotiating for a new bargaining agreement from October 13, 2005 to January 17, 2006.  By a letter dated January 23, 2006 Respondent notified Petitioner of its intent to withdraw its recognition from the Union as of January 27, 2006 based on an exchange at the bargaining table that took place on January 17, 2006.

On January 17, 2006 the Union calculated an economic proposal regarding wage increases based on the 24 of the 82 bargaining unit members who had authorized dues checkoff.  Union President Brookins testified that he completed the calculations based on the 24 employees that the Union knew were members.  Respondent's President Bernsen asserted that in the event the Union only represented 24 employees then it did not represent a majority of workers.  Santoro, a staff representative for the Union, then testified that he immediately stated that the Union represented all of the bargaining unit employees.  Respondent told the Union that it had to offer affirmative proof of its majority status by January 27, 2006 otherwise it would withdraw its recognition.  As of January 27, 2006 Petitioner did not fulfill Respondent's request.  Subsequently, Bernsen testified that he based the decision to withdraw Respondent's recognition on three reasons: (1) he characterized Brookins statement on January 17,2006 as an admission

that Union represented only 24 employees and therefore had lost its majority support; (2) the Union did not prove its majority status by January 27, 2006 as Respondent requested; and (3) upon review of Respondent's payroll records, it determined that only 24 employees had authorized dues check off.

After Respondent withdrew recognition from the Union, the Union's President on January 30, 2006 stated that " [t]here are only about 24 union members in the Cadiz Carriage Inn unit. We have not represented a majority of the Unit there for about 3 ½ years. . . ." Also, the Union voluntarily collected authorization cards between January and March of 2006. Then, in its letter dated March 21, 2006, the Union renewed its demand for continued recognition, offered to show proof of majority status to Respondent, and requested that Respondent resume bargaining. Although Respondent recognizes that facially the number of authorization cards constitute a slight majority of unit employees, Respondent has asserted its doubt that the Union did indeed enjoy majority support and questioned the authenticity of the Union's proof. (Doc. # 18 at p. 4 n.7; G.C. Exh. 7.) Consequently, based on its suspicions, Respondent has refused to rely on the purported evidence and to the present date has refused to recognize the Union and resume bargaining.

The Union then filed charges with the Board on March 24, 2006 alleging that Respondent engaged in, and is engaging in, unfair labor practices within the meaning of § 8(a)(1) and 8(a)(5) of the NLRA. On or about March 27, 2006, Respondent unilaterally announced by notice to employees that bargaining unit employees would receive a four percent wage increase retroactive to November 10, 2005. Finally, General Counsel of the Board, on behalf of the Board, issued a Complaint and Notice of a hearing on May 31, 2006.

As a result, Petitioner seeks injunctive relief pursuant to Section 10(j) of the NLRA. 29 U.S.C. § 160(j). Specifically, Petitioner seeks an injunction to prevent Respondent from withdrawing its recognition from the Union as the certified exclusive collective bargaining representative of Respondent's employees and from refusing to recognize and bargain with the Union. Consistent with Sixth Circuit precedent and the Local Rules, this Court **GRANTS** Petitioner's request that this Court adjudicate its § 10(j) petition solely on the basis of the administrative record.[1]

## Standard of Review

Normally, labor disputes are resolved through administrative procedures and, when necessary, enforced by the courts of appeals. *Kobell v. United Paperworkers Int'l. Union*, 965 F.2d 1401, 1406 (6th Cir. 1992). Section 10(j) of NLRA provides the Board with the ability to petition a district court to enjoin allegedly unfair labor practices in order to preserve the status quo pending the Board's substantive review of those practices. 29 U.S.C. § 160(j); *see Kobell,* 965 F.2d at 1406. The Sixth Circuit has stated that before a district court may issue a temporary injunction under 10(j), the court must make two findings. *Kobell,* 965 F.2d at 1406. First, the court must determine whether there is a "reasonable cause to believe" that the respondent has violated the NLRA and second, whether temporary injunctive relief is "just and proper." *Id.*[2] If

---

[1] Despite Respondent contentions, this Court finds in light of Sixth Circuit precedent and the Local Rules, that it is unnecessary to hold a full, evidentiary hearing to determine whether to grant the 10(j) petition. S.D. Ohio Civ. R. 7.1 (a)(b); *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987) (stating that the district court did not abuse its discretion when it decided not to hold a full evidentiary hearing before ruling on a 10(j) petition). Rather, this Court can properly determine whether there is "reasonable cause to believe" that the NLRA has been violated and whether injunctive relief is "just and proper" based upon the record established in the underlying unfair labor practice proceeding that closed on August 24, 2006. *Id.* Therefore, Respondent's Motion to Strike Petitioner's Exhibit B (Doc. # 21) is **moot**.

[2] Given the limited role of this Court when deciding a 10(j) petition and the fact that this Court has held it is unnecessary to hold a full evidentiary hearing, this Court **DENIES** Respondent's Motion For Reconsideration of

the court answers in the negative either of these inquires then the petition must be denied. *See id.* The reasonable cause to believe standard is to be determined from the prospective of the Regional Director who is the Petitioner in this matter.

The Sixth Circuit has emphasized that to establish reasonable cause the Petitioner bears a "relatively insubstantial" burden. *Kobell,* 965 F.2d at 1406 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987)). Petitioner's burden is to show that the Board's legal theory of liability is substantial and not frivolous. *Id.* Petitioner does not have to prove a violation of the NLRA occurred or convince the Court of the validity of his or her theory as long the theory has substantiality. *Id.* This question is essentially one of law, and, in answering the question, a district court "need not concern itself with resolving conflicting evidence if facts exist which could support the Board's theory of liability." *Kobell,* 965 F.2d at 1406 (quoting *Fleischut v. Nixon Detroit Diesel, Inc*., 859 F.2d 26, 29 (6th Cir. 1988)). Thus, as long as Petitioner presents any evidence that supports his or her theory, conflicting evidence does not preclude this Court from finding that "reasonable cause" exists. *See Schaub v. W. Michigan Plumbing and Heating, Inc*., 250 F.3d 962 (6th Cir. 2001) (stating that the reasonable cause prong can still be met even if there is conflicting evidence as long as there are facts that support the Petitioner's theory of liability) (citing *Gottfried,* 818 F.2d at 494, *Fleischut*, 859 F.2d at 29).

The Sixth Circuit has stressed that a district court's role when deciding the reasonableness prong of a 10(j) petition is a limited one: its function is "to determine whether, in light of a tangled web of facts, the Board's theory has merit." *Kobell,* 965 F.2d at 1406 (citing *Gottfried,* 818 F.2d at 493, 494.) Conversely, the district court is prohibited from assessing the merits in the

---

this Court's August 17, 2006 Order (Doc. # 19) in which this Court granted Petitioner's Motion to limit discovery.

underlying unfair labor case pending before the Board. *Schaub*, 250 F.3d at 969 (stating that "the district courts in their analysis under 10(j) are not to adjudicate the merits of the unfair labor practice case") (quoting *Fleischut,* 859 F.2d at 29). Thus, the district court cannot resolve conflicts of facts in the evidence or assess the credibility of witnesses to determine whether a violation of the NLRA has occurred, rather that function is vested exclusively with the Board. *See Kobell,* 965 F.2d at 1406; *Gottfried,* 818 F.2d at 494.

If the district court determines that there is reasonable cause to believe that an unfair labor practice has occurred, the court must then examine whether injunctive relief in the case before it would be "just and proper." *Kobell,* 965 F.2d at 1406. Congress granted the district courts power to issue 10(j) injunctions because administrative review is often slow, and therefore, without the preservation of the status quo, a final board order may not be able to undo the effects of unfair labor practices that occurred during the pendency of the action. *Kobell,* 965 F.2d at 1406. Thus, interim injunctive relief occasionally may be necessary to ensure that the remedial power of the Board is effective. *Kobell,* 965 F.2d at 1406; *see Gottfried v. Mayco Plastics, Inc*., 472 F. Supp. 1161 (E.D. Mich.1979)**,** aff'd mem., 615 F.2d 1360 (6th Cir.1980). In this regard, the district court must determine "that it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board." *Eisenberg v. Lenape Prods., Inc.,* 781 F.2d 999, 1003 (3d Cir.1986). This Court notes that the "status quo" refers to preserving the state of affairs before the alleged unfair labor practices took place. *See Fleischut,* 859 F.2d at 20 n.3; *Mayo Plastics, Inc*., 472 F. Supp at 1166 (stating that the status quo after the alleged unfair practices took place "is undeserving of protection").

**Discussion**

**1. Reasonable Cause**

Respondent argues that Petitioner does not meet the reasonable cause analysis because Petitioner's legal theory lacks substantiality and therefore is "purely frivolous." (Doc. # 18 at 17). Specifically, Respondent argues that the Board and the Supreme Court have held that an employer is forbidden from recognizing or bargaining with a minority union. *Id.* Respondent characterizes the exchange that occurred on January 17, 2006 as an admission that the Union lacked majority support, and therefore Respondent's withdrawal of recognition was entirely proper. *Id.* Petitioner argues that he has offered a substantial legal theory to support his argument that Respondent violated § 8(a)(5) of the NLRA when it unlawfully withdrew its recognition of the Union. While this Court agrees with several of the legal principles that Respondent advances, this Court finds that Petitioner has provided sufficient information to conclude that there is reason to believe that the Union had majority status despite Respondent's contentions.   For the reasons that follow, this Court finds that Petitioner has met the first requirement for a 10(j) injunction.

Once a union has been certified by the Board as the exclusive collective bargaining representative, there is an irrebuttable presumption that a union continues to enjoy majority support of the unit employees while the collective bargaining agreement is in effect. *Lee Lumber and Bldg. Material Corp.*, 322 NLRB 175, 176 (1996); *affd. in part and remanded in part*, 117 F.3d 1454 (D.C. Cir. 1997); *see NLRB v. Burns Int'l Security Services Inc.,* 406 U.S. 272, 290 n.12 (1972).[3]  Upon expiration of the agreement, the presumption becomes rebuttable. *Id.* The burden of rebutting the union's majority status is on the employer. *Levitz Furniture Co.*, 333

---

[3] *Lee Lumber and Bldg. Material Corp.* has been overruled to the extent that it holds an employer may withdraw recognition from an union because it harbors uncertainty or even disbelief concerning the union's majority status.  The good faith doubt standard based on objective considerations has been replaced by an "actual loss of majority" test. *Levitz Furniture Co.*, 333 NLRB 717 (2001).

NLRB 717 (2001). An employer may rebut the presumption by affirmatively establishing by a preponderance of the evidence that the union has actually lost the support of a majority of unit employees.[4] Therefore, the NLRA requires that the employer must withdraw its recognition of the union because a collective bargaining agreement between an employer and a minority unit is invalid. *Id.*[5] 29 U.S.C. § 157; *Garment Workers v. NLRB*, 366 U.S. 731, 738 (1961) (stating that an employer cannot extend voluntary recognition to a labor organization, if at the time of recognition, the union does not, in fact, represent a majority of the bargaining unit employees); *See Levitz Furniture Co.*, 333 NLRB 717, 724-25 (2001) (stating that under the NLRA if a union has actually lost majority support, the employer must cease recognizing it).

As to the specific provisions of the NLRA, an employer who recognizes a minority union as its employees' exclusive bargaining representative violates the employees' right to refrain under § 7 of the NLRA and thereby violates § 8(a)(1) and § 8(a)(2) of the act, which prohibits employer interference with, and restraint of, employees' exercise of § 7 rights. 29 U.S.C. § 157; *Garment Workers*, 366 U.S. at 738. Conversely, § 8(a)(5) requires an employer to bargain with the union that represents a majority of its employees. The Board has stated that:

> An employer who withdraws recognition from a majority union, even in good faith, invades his employees' Section 7 rights every bit as much as an employer who unwittingly extends recognition to a minority union. Consequently, an employer who withdraws recognition from an incumbent union, in the honest mistaken belief that the union has lost majority support, should be found to violate Section 8(a)(5).

---

[4] This Court will later discuss the "actual loss of majority" test to determine what constitutes "support."

[5] The only other instances when an employer may withdraw its recognition of a union and therefore rid itself of any bargaining obligation is when the Board conducts an election demonstrating that fewer than a majority of bargaining unit employees wish to be represented or the union voluntarily withdraws as the exclusive collective bargaining representative. *See Levitz Furniture Co.*, 333 NLRB 717.

*Levitz Furniture Co.*, 333 NLRB at 725.

In *Levitz Furniture Co.*, the Board reconsidered under what circumstances an employer may unilaterally withdraw its recognition of an incumbent union. *Levitz Furniture Co.*, 333 NLRB 717. The Board established a more stringent "actual loss of the majority test," which requires that an employer show by a preponderance of the evidence an actual numerical loss in majority support in order to rebut the presumption of an incumbent union's majority status and therefore defend its withdrawal as lawful. *Id.* at 725. In doing so, *Levitz* overruled *Celanese Corp.*, 95 NLRB 664 (1951) and its progeny insofar as they permitted an employer to lawfully withdrawal its recognition from a union upon a good faith doubt (uncertainty or disbelief) based on objective evidence as to the union's continued majority status. *Id.*

In order to determine whether Petitioner has offered a substantial legal theory to support its argument that Respondent violated § 8(a)(5) of the NLRA, this Court must first address what constitutes majority "support." This Court emphasizes the important distinction between union "support" and union "membership." First, "the Board, with court approval has [consistently] held that a showing that less than a majority of the employees in the unit are members of the union is not the equivalent of showing lack of majority support." *See, e.g., Bartenders Ass'n of Pocatello*, 213 NLRB 651, 652 (1974). Secondly, with respect to the number of employees that have authorized dues checkoffs, "the board, with court approval has [also] consistently held that a showing of actual financial support of an incumbent union, at least where such support is made voluntary, is not the equivalent of establishing the number of legal employees who continue to desire representation by that union." *Id.* Because there may be employees who favor being represented by a union but decided not to authorize the company to deduct union dues, the Board

9

has emphasized, with court approval, that a lower number dues-check authorizations does not establish a reasonable basis for believing that a union has lost majority support. *Id.*

As this Court turns to the present case to determine whether there is "reasonable cause to believe" that Respondent violated the NLRA, we reemphasize our directive in answering this question. This Court cannot adjudicate the merits and thereby resolve conflicts within a "tangled web of facts," rather the question is one of law. *Kobell,* 965 F.2d at 1406.; *Nixon Detroit Diesel*, 859 F.2d at 29. In the present case, Respondent notified Petitioner of its intent to withdrawal its recognition of the Union by a letter dated January 23, 2006. Therefore, this Court will examine whether Petitioner's legal theory of unlawful withdrawal is supported by the principles of the NLRA according to evidence prior to January 23, 2006. Specifically, this court will consider the exchange between these parties at the bargaining table that took place on January 17, 2006 to determine whether Petitioner has put forth a "substantial" legal theory that Respondent unlawfully withdrew its recognition of the Union. Thus, this Court will not consider the events that occurred *after* Respondent withdrew recognition from the Union, including the Union's President statement on January 30, 2006.

On January 17, 2006 the Union calculated an economic proposal regarding wage increases based on the 24 of the 82 bargaining unit members who had authorized dues checkoff. Union President Brookins testified that he completed the calculations based on the 24 employees that the Union knew were members. Respondent President Bernsen asserted that in the event the Union only represented 24 employees then it did not represent a majority of workers. Santoro, a staff representative for the Union, then testified that he immediately stated that the Union represented all of the bargaining unit employees

Subsequently, Bernsen then testified that he based the decision to withdraw Respondent's recognition of the Union on three reasons: (1) he characterized Brookins statement on January 17,2006 as an admission that Union represented only 24 employees and therefore had lost its majority support; (2) the Union did not prove its majority status by January 27, 2006 as Respondent requested; and (3) upon review of Respondent's payroll records, it determined that only 24 employees had authorized dues check off. (Doc. # 18 at 2, 11.) Thus, Respondent argues that Petitioner's claim is frivolous because clearly the Union lacked majority support, and therefore Respondent lawfully withdrew its recognition. Based on these facts, Petitioner argues under the NLRA, this Court should have "reason to believe," that Respondent violated § 8(a)(5).

First, the fact that the Union calculated an economic proposal regarding wage increases based on the 24 of the 82 bargaining unit members who had authorized dues checkoffs is not the equivalent of establishing the number of legal employees who continue to desire representation by that union. *See Bartenders Ass'n of Pocatello*, 213 NLRB at 652. Secondly, Respondent's argument is predicated on the fact that Brookins's January 17, 2006 statement was an admission that the Union did not have majority support. This is contradicted by Santoro's testimony that he immediately then stated that the Union represented all of the bargaining unit employees.

For this Court to find that Respondent is correct, it would be required to interpret the January 17, 2006 exchange, resolve conflicting testimony and witness credibility issues, and then subsequently agree with the Respondent's characterization of the statement as an admission. Only then, could this Court conclude that Respondent properly withdrew its recognition thereby making Petitioner's legal theory frivolous. Thus, the Respondent in effect is asking this Court to interfere with the exclusive authority of the Board. *See Schaub*, 250 F.3d at 969; *Kobell,* 965

11

F.2d at 1406; *Gottfried,* 818 F.2d at 494. Respondent's conclusion that Petitioner's claim lacks substantiality would require this Court to adjudicate the merits by improperly engaging in fact finding in the underlying labor dispute. *Id.*

In sum, this Court finds that there is reason to believe that Respondent unlawfully withdrew its recognition of the Union in violation of § 8(5)(a) of the NLRA based on the following factors: (1) this Court cannot characterize the January 17, 2006 statement as an admission, (2) this Court recognizes that an employee's refusal to be a full time union member and/or authorize dues check off is not sufficient to show lack of majority support; and (3) Petitioner's theory, is not negated for purposes of a 10(j) petition by conflicting evidence that Respondent's withdrawal of recognition from the union was based on its honest belief that the Union lacked majority status.[6]

**2. Just and Proper**

This Court now turns to the question as to whether injunctive relief would be just and proper. Under this second inquiry, Congress authorized injunctive relief under section 10(j) upon a showing that such relief is just and proper and not upon the traditional, more stringent requirement of irreparable harm. *Kobell,* 965 F.2d at 1406 (quoting *Nixon Detroit Diesel*, 859

---

[6] Because this Court has found that there is reason to believe that Respondent violated § 8(a)(5) of the NLRA based solely on Petitioner's theory that it unlawfully withdrew its recognition from the Union, this Court does not need to address for purposes of 10(j) injunction Petitioner's two other unfair labor practice allegations. The Petitioner made these allegations in his 10(j) petition to bolster the substantiality of his legal theory. Specifically, this Court does not need to consider whether there is reason to believe that Respondent failed and refused to furnish the Union with information that it requested to fulfill its role as the collective bargaining representative. Moreover, this Court will also not address Petitioner's last unfair practice allegations concerning whether Respondent made unilateral and unlawful changes in the terms and conditions of employment when it granted a wage increase for bargaining unit employees on March 27, 2006. The legality of the wage increase is predicated on the Board's final determination as to whether Respondent did, in fact, unlawfully withdraw its recognition of the Union. Thus, it is not within the purview of this Court to decide this issue. Nor may this Court, at this time, revoke the wage increase. To do so, this Court would be required to impermissibly adjudicate the merits of the allegations to determine whether Respondent did, in fact, unlawfully withdrawal its recognition.

F.2d at 30, n.3).

Petitioner argues that an injunction is necessary to ensure that the Board's remedial power is not undermined and defeated. Specifically, it claims that as a result of Respondent's alleged unlawful withdrawal of recognition, member support will erode, and if erosion continues the forthcoming Board order could be a nullity. Moreover, Petitioner argues that "not only have employees been denied the right to union representation in matters such as grievance handling for example, but they have been and are being denied the benefits which collective bargaining could bring them once a new agreement is reached." (Doc. # 11 at 18.)

The Sixth Circuit recognizes the real danger that exists when an employer continues to withhold recognition. *Frye v. Speciality Envelope*, 10 F.3d 1221, 1226-27 (6th Cir. 1993) (quoting *Asseo v. Centro Medico del Turabo*, 900 F.2d 445 (1st Cir. 1990) (stating "[t]here was a very real danger that if [the employer] continued to withhold recognition from the Union, employee support would erode to such an extent that the Union could no longer represent those employees. At that point, any final remedy which the Board could impose would be ineffective.") In *Frye*, the Sixth Circuit found that injunctive relief was "just and proper" since it was necessary to prevent further erosion of union support. *Frye*, 10 F.3d 1226-27.

Here, Petitioner offers evidence of employee Anita Peterson who testified that she shared with other employees her worries about what was going to happen to her job and her family if there was no union. (Tr. 362.) In light of the fact that this Court has found that there is reason to believe that unfair labor practices have been committed, and that Petitioner presents some evidence that erosion of Union support may have occurred and/or is occurring as employees cannot engage in Union activities and representation, this Court finds that it is "just and proper"

13

to issue injunctive relief at this time.

## Conclusion

In conclusion, this Court has found that there is reason to believe that Respondent unlawfully withdrew its recognition from the Union and therefore has engaged in unfair labor practices within the meaning of § 8(a)(5) of the NLRA.  This Court further concludes that it is just and proper to **GRANT** Petitioner's request (Doc. # 2) and issue an interim injunctive relief pursuant to 10(j) of the NLRA.  Preservation of the status quo prior to the alleged unlawful withdrawal of Respondent's recognition refers solely to the prior status of the bargaining between the parties.  Therefore, pending the resolution of the underlying labor dispute, this Court orders Respondent to recognize the Union as the certified exclusive collective bargaining representative and resume Bargaining with the Union.  Thus, this Court's injunction cannot and will not have an effect on the March 2006 wage increase.  This Court also **DENIES** Respondent's Motion for Reconsideration (Doc. # 19.) and notes that Respondent's Motion to Strike (Doc. # 21) is **MOOT**.

      **IT IS SO ORDERED.**

       **/s/ Gregory L. Frost**
      **GREGORY L. FROST**
      **UNITED STATES DISTRICT JUDGE**